# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

ELECTRONIC PRIVACY )
INFORMATION CENTER, )
)
Plaintiff, )
)
v. )        Civil Action No. 18-1814 (TNM)
)
UNITED STATES DEPARTMENT )
OF JUSTICE, )
)
Defendant. )
_____ )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE

Pursuant to Local Rule 7(h), defendant United States Department of Justice, on behalf of

the Executive Office for United States Attorneys ("EOUSA"), submits this response to plaintiff's

statement of material facts as to which there is no genuine issue:[1]

1.  Defendant stated that by letters dated June 14, 2017, June 21, 2017, and July 2, 2019,

plaintiff sought the first page of all orders for cell phone site locations issued pursuant to 18

U.S.C. § 2703(d), for the years 2016, 2017, 2018 and 2019.  Declaration of John W. Kornmeier

("Kornmeier Decl."), ¶ 4.

Response:  Plaintiff dispute is that that its July 2, 2019 request also asked for warrants for

_____

[1] Numbers 1-22 refer to defendant's statement of material facts not in dispute; numbers 23-27
appear to be plaintiff's statement of material facts not in dispute.  Defendant addresses plaintiff's
response to number 1 because it appears to raise a statement of material fact not in dispute – that
this case covers a request for warrants made in plaintiff's July 2, 2019 FOIA request.  Defendant
also addresses numbers 20 and 21 for the reasons expressed infra at 2.

production of cell site locations.  Undisputed but plaintiff failed to exhaust its administrative remedies with respect to that request.  Supplemental Declaration of John W. Kornmeier ("Kornmeier Decl."), attached, ¶ 5.   Moreover, the Amended Complaint in this case, ECF No. 18, only identifies "[t]he first page of Section 2703(d) orders for production of cell site location information . . ." as being at issue in this case with respect to the July 2, 2019 request.  ECF No. 18 at ¶¶ 38-39.

20.  EOUSA has no policy, practice or pattern of failing to search for reasonably described FOIA requests submitted by plaintiff.  Kornmeier Decl., ¶ 16.

Response:  Plaintiff disputes this but in violation of Local Rule 7(h)(1) cites no evidence in support of its positon.

21.  EOUSA has no policy, practice or pattern of failing to meet FOIA deadlines as construed by the statute and the courts.  Kornmeier Decl., ¶ 17.

Response:  Plaintiff disputes this but in violation of Local Rule 7(h)(1) cites no evidence in support of its positon.

23.   The DOJ has a policy of not conducting an electronic keyword or advanced search of shared network drives for records that it acknowledges should exist due to the configuration of its networks. See Leshner Decl., ¶ 8; Declaration of John M. McEnany ("McEnany Decl.), ¶ 6; Martin Decl., ¶ 5; Perricone Decl., ¶¶ 5–6.

Response:  Disputed.  Plaintiff's statement of material fact is not supported by the declarations it cites.

24.   The DOJ has a policy of not manually reviewing case files for § 2703(d) orders. See McEnany Decl., ¶ 7; Martin Decl., ¶ 4; Perricone Decl., ¶ 4; Wilson Decl., ¶¶ 9–10, 12;

Leshner Decl., ¶¶ 5–6.

<u>Response</u>:  Disputed.  Plaintiff's statement of material fact is not supported by the declarations it cites.

25.     The DOJ has a policy of not searching its CASEVIEW database for information that is not already "indexed" or "tracked" by the database. See Declaration of John W. Kornmeier ("Kornmeier Decl."), ¶ 6–7; Perricone Decl., ¶ 3; Martin Decl., ¶ 3.

<u>Response</u>:  Disputed.  Plaintiff's statement of material fact is not supported by the declarations it cites.

26.     The DOJ has a policy of not conducting an electronic search of its email archives through either USAMail Archive or its users' Personal Archive Folders. McEnany Decl., 6(d).

<u>Response</u>:  Disputed. Plaintiff's statement of material fact is not supported by the declaration it cites.

Respectfully submitted,


JESSIE K. LIU,
D.C. BAR # 472845
United States Attorney
for the District of Columbia


DANIEL F. VAN HORN,
D.C. BAR #924092
Chief, Civil Division

 /s/ *Marina Utgoff Braswell*
MARINA UTGOFF BRASWELL,
D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530

3

(202) 252-2561
Marina.Braswell@usdoj.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-1814 (TNM) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

**PRELIMINARY STATEMENT**

In this suit brought against the United States Department of Justice ("DOJ") under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff seeks from DOJ's Executive

Office of U.S. Attorneys ("EOUSA") the first page of all orders for cell phone site locations

issued pursuant to 18 U.S.C. § 2703(d) ("Section 2703(d) orders"), for the years 2016, 2017,

2018 and 2019.  Although plaintiff now argues that it also seeks warrants for searches of cell

phone records, that request is not properly before the Court because plaintiff failed to exhaust its

administrative remedies or to include it as a claim in the First Amended Complaint.

With respect to Section 2703(d) orders for cell phone site locations, plaintiff does not

dispute that EOUSA has no database that tracks this information for all 94 U.S. Attorney's

Offices ("USAO").  Plaintiff essentially keeps repeating that the individual U.S. Attorney's

Offices have these records somewhere in their possession and thus each office has to do a search for them.  This position, however, completely disregards the fact that an agency is only required to do a *reasonable* search for responsive records and not every search that conceivably could be done constitutes a *reasonable* search under FOIA.  Thus, plaintiff's apparent argument that the agency has in its possession responsive records; that the FOIA requires a search for responsive records; and thus defendant must be required to undertake a search regardless of whether it is reasonable fails at the outset.  Moreover, plaintiff's request went to defendant as an agency and not to individual USAO offices and thus plaintiff's request must be looked at as a whole, encompassing all 94 USAOs.

Plaintiff's statement that EOUSA and its component offices "have refused to conduct *any* searches," Plaintiff's Opp. at 2 (emphasis added) , is blatantly false, given plaintiff's concession that certain searches were attempted by offices specifically chosen by plaintiff.

Plaintiff attempts to undercut defendant's declarations also fail.  At most plaintiff shows that certain limited searches for responsive information could be undertaken.  But plaintiff never sought to limit the breadth of the searches it wanted.  Indeed, when specifically informed of one limited search that could be undertaken by the USAO for the Southern District of New York ("SDNY"), plaintiff never asked that such a search be undertaken.  Plaintiff should not be heard now to claim that because limited searches could be undertaken that it is entitled to summary judgment on its request that all 94 USAOs undertake full searches for responsive records. Plaintiff's request went to defendant as an agency and not to individual USAO offices and thus plaintiff's request must be looked at as a whole, encompassing all 94 USAOs.

Finally, plaintiff offers no evidence in support of its claims that EOUSA has a policy,

pattern and practice of failing to conduct a search in response to reasonably described FOIA requests or a policy and practice of failing to comply with FOIA's statutory deadlines or even any argument in response to defendant's showing on these issues.

Accordingly, as demonstrated in defendant's prior memorandum ("Defendant's Mem,") and accompanying declarations, and as set forth below and in defendant's supplemental declarations, defendant is entitled to summary judgment and plaintiff's cross-motion for summary judgment should be denied.

## **ARGUMENT**

### I.    **EOUSA has no Policy, Pattern or Practice of Failing to Conduct a Search in Response to Reasonably described FOIA Requests**

In defendant's dispositive motion, accompanied by several declarations, defendant demonstrated that EOUSA has no policy, pattern, or practice of failing to conduct a search in responsive to a reasonably described FOIA request, as alleged in Count IV of the Amended Complaint.  See Defendant's Mem. at 3-4.  Plaintiff has provided no evidence of any such policy, pattern or practice.  See generally Plaintiff's Opp.

At most, with respect to plaintiff's requests in this case, plaintiff claims that defendant failed to search its electronic systems or physical case files for records responsive to plaintiff's requests.  Plaintiff's Opp. at 3.  Defendant's position that to search for records responsive to plaintiff's specific requests here would be unreasonably burdensome is hardly evidence of any "policy, pattern or practice" affecting FOIA requesters in general, or even plaintiff as a repeat FOIA requester.  Defendant's position is limited to these specific requests, and defendant's declarations explain in detail why these specific requests present an undue burden.

3

Moreover, plaintiff simply ignores the fact that plaintiff was expressly informed that limited searches could in fact be performed, such as of the Criminal Clerk's Log in the USAO-SDNY, and plaintiff declined to ask that such a search be undertaken.  Declaration of John W. Kornmeier ("Kornmeier Decl."), ¶ 8.

Accordingly, based on defendant's declarations, and plaintiff's utter lack of any evidence of a policy, pattern or practice affecting FOIA requests submitted to defendant, defendant plainly is entitled to summary judgment on Count IV of the Amended Complaint.  See Taylor v. F.D.I.C., 132 F.3d 753, 763 (D.C. Cir. 1997) ("Dignified silence is a dangerous tactic at best; here it proves fatal").

## II.   EOUSA is Not Obligated to Perform an Unduly Burdensome Search

Although plaintiff spends much time emphasizing that under the FOIA there is a duty to search for responsive records, the duty arises only when a reasonable search can be undertaken. See Defendant's Mem. at 5-6.  Plaintiff takes issue with defendants' declarations explaining why the search sought by plaintiff would be unduly burdensome.  Plaintiff's attempt to undermine those declarations fail.

### A.   USAO-DC

With respect to the USAO-DC, plaintiff argues that the office entered into a memorandum of Understanding ("MOU") with the Clerk's Office of this Court under which USAO-DC is required to file Section 2703(d) applications in the Court's CM/ECF system, with uniform case captions and document titles.  Plaintiff's Opp. at 12, 21.  This gets plaintiff nowhere. As the accompanying Supplemental Declaration of T. Patrick Martin ("Supp. Martin Decl.") explains:

the USDC—not the USAO-DC—manages the electronic system for receiving,

4

processing, and filing 2703(d) orders.   Moreover, as a result of standardized captions for sealed MC Cases required under the MOU, the "USDC Clerk's Office [generates] biannually reports via CM/ECF reflecting the docket numbers and case captions associated with sealed applications ("MC docket report"), except for applications related to the non-disclosure of grand jury subpoenas."  *Id.* at 2.  As such, the USDC Clerk's Office—not the USAO-DC—has the ability to search the USDC's sealed CM/ECF system to gather and report on the number of 2703(d) Orders entered during a six-month reporting period.  The USDC Clerk's Office makes these MC docket reports publically available on or around March 31 and September 30 of each year.  *Id.*  Sealed 2703(d) applications and orders maintained within the USDC's sealed CM/ECF system are not available by PACER. Moreover, USDC has not granted the USAO-DC the ability to conduct a comprehensive digital search of the USDC's sealed CM/ECF system in its entirety; rather, the USDC grants access to individual AUSAs and paralegals, who only have access to those cases to which they are assigned in the USDC's sealed CM/ECF system.

Supp. Martin Decl., ¶ 2; see ¶ 3.  Thus, contrary to plaintiff's unsupported claim, see Plaintiff's

Opp. at 21-22, the USAO-DC does *not* have the means to use this Court's system to search for

all the 2703(d) orders sought by plaintiff, and plaintiff's position that the existence of this MOU

shows that USAO-DC made egregious inaccurate statements, see Plaintiff's Opp. at 21, is itself

an egregious misrepresentation.

Plaintiff also argues that USAO-DC should be able to undertake a search because it

conceded that beginning in 2016 "some" AUSAs or their paralegals worked to digitally scan and

electronically save copies of 2703(d) orders into the CASEVIEW system.  Plaintiff's Opp. at 12,

20, citing Martin Decl. ¶¶ 3, 5.  On the contrary, the Martin Declaration says nothing about

AUSAs in the USAO-DC entering this information into CASEVIEW.  See Martin Decl.

The Supplemental Martin Declaration makes clear that:

In my first declaration, I also stated that *some* USAO-DC AUSAs within some Sections of the Criminal Division, beginning sometime in 2016, began to manually list 2703(d) orders (of all sorts, not just for cell-site location information) by logging the case number for the 2703(d) order in *an electronic document log (such as a spreadsheet) maintained within the Section, or a part of the Section,* as a

> means of tracking deadlines for renewing non-disclosure orders that accompany some 2703(d) orders.  Not all Sections and AUSAs have maintained these logs, however.  Moreover, while the individual "electronic document logs" maintained within some Sections and by some AUSAs in the Criminal Division may be digitally searched, such a search would be incomplete and would primarily only serve to identify the matters in which 2703(d) orders were obtained and not copies of the orders themselves, which would have to be located separately.  And, to be clear, the "electronic document logs" maintained within some Sections by some AUSAs in the Criminal Division to which I referred are not the EOUSA CASEVIEW database.   Indeed, a search of USAO-DC matters within CASEVIEW using the search function and search term "2703" generates just five records pertaining to apparent 2703(d) applications.

Supp. Martin Decl., ¶ 3.  Thus, plaintiff is wrong to argue that the USAO-DC can search

CASEVIEW to locate responsive section 2703(d) orders.

Finally, plaintiff argues that USAO-DC maintains network files that could be searched.

Plaintiff's Opp. at 18.  The Supplemental Martin Declaration explains why this is wrong.   Mr.

Martin states that:

> The files' contents are not indexed. USAO-DC currently has about 500 TB of data and any effort by USAO-DC IT Services to access and index that content data would render the system largely unusable for ordinary business purposes.  Our file organization manifests as folders identified by case identifiers, not by subject matter, and within our folders we do not have standard file structures in the Superior Court or Criminal Divisions, as each Division Section and case being handled within it is unique. Both of these characteristics indicate a search of the entire volume of 500TB, rather than a subset, would be necessary, with all the difficulties indicated above. We do not have an exact count of the number of digital files but believe the order of magnitude is in the 100,000,000 range. This is not a search that USAO-DC IT Services could run with our current system and file configuration.

Supp. Martin Decl., ¶ 3.

Plaintiff cites to Pinson v. U.S. Dep'y of Justice, 80 F. Supp.3d 211 (D.D.C. 2015), for

the proposition that an agency may not refuse to search based on a claim that the search is

incompatible with their record system and thus unduly burdensome.  Plaintiff's Opp. at 19.

Plaintiff's reliance on this case is misplaced.

In <u>Pinson</u>, the plaintiff requested, among other things, access to all settlement agreements entered into or involving the Bureau of Prisons regarding conditions at a specific penitentiary. <u>Id</u>., 80 F. Supp.3d at 213.  The Civil Division responded that t did not catalog its cases in a way that would allow it to search all civil litigation pertaining to a particular BOP facility. <u>Id</u>. at 214.  The Court denied defendant summary judgment because it found that the Civil Division had failed to sufficiently describe why the search would be unreasonably burdensome. <u>Id</u>. at 215-16.  In particular, the Court noted that the Civil Division had failed to provide, among other things,  any estimate as to the time required to conduct the search or the number of files that would have to be searched.  The Court did not, as plaintiff claims hold that an agency may not declare a search to be unreasonably burdensome based on the type of record system it has. <u>See</u> Plaintiff's Opp. at 19.

Unlike the declarations in <u>Pinson</u>, the declarations here, including that from the USAO-DC, give a detailed explanation as to why searches would be unduly burdensome.

Plaintiff also argues that it is not plausible that there is no mechanism for searching for responsive records in shared drives, records management systems and email archive systems because it has been done in other cases. <u>See</u> Plaintiff's Opp. at 19-20.  Plaintiff's argument misses the mark.  Defendant is not representing that it can never search these systems; it all depends upon the nature of the request made and how information concerning the request is logged into the agency's systems.  Plaintiff makes no effort to show that of the cases he cites are in any way similar to the request and systems at issue here.  Except for one, the cases cited do not even involve EOUSA or USAOs, or the records systems at issue here. <u>See</u> <u>Shapiro</u> v.

7

U.S. Dep't of Justice, 293 F. Supp.3d 99, (D.D.C. 2018) (FBI records); Gilliam v. Dep't of Justice, 128 F. Supp.3d 134 (D.D.C. 2015) (Department of Justice's Criminal Division); Wright v. Dep't of Justice, 121 F. Supp.3d 171 (D.D.C. 2015) (Department of Justice's Criminal Division); Judicial Watch, Inc. v. U.S. Dep't of Justice, 806 F. Supp.2d 74 (D.D.C. 2011) (Department of Justice's Civil Rights Division).

In Cooper v. Stewart, 763 F. Supp.2d 137 (D.D.C. 2011), the plaintiff sought records pertaining to a detainer lodged against him.  EOUSA was able to search the Legal Information Office Network System ("LIONS"), which was the predecessor to CASEVIEW, because it could retrieve records from that system using the plaintiff's name and district court case number, both of which the plaintiff provided.  Id. at 142.  The search could be done in that case because the request sought records that were indexed to the plaintiff's name and district court case in the system.  It is undisputed here that Section 2703(d) orders are not indexed in an electronic system.  Thus, plaintiff's reliance on the decision in Cooper is unavailing.

### B.    USAO-SDNY

Plaintiff argues that USAO-SDNY admits that that its AUSAs may store casa data on the local "N-Drive" which could be searched, as well as the USAMail Archive and the Personal Archive Folders.  Plaintiff's Opp. at 18.

With respect to USAMail Archive and the Personal Archive Folders, the attached Supplemental Declaration of John M. McEnany ("Supp. McEnany Decl.") states that:

> USAO-SDNY could request EOUSA to run a search across its USAMail
> Archive and across user Personal Archive Folders for copies of 2703(d) cell site
> orders that may have been emailed: USAMail Archives generally retain email
> only for three years, and inasmuch as USAO-SDNY stopped using orders under
> § 2703(d) to obtain cell site information in September 2017, a search across

USAMail archives, even if possible, would not be reasonably calculated to obtain all such orders as Plaintiff requests. Personal Archive Folders, if maintained by an Assistant U.S. Attorney, may cover a greater time span, but again, there is no indication that all 2703(d) cell site orders could be identified in this matter and thus this type of search does not appear reasonably suited to satisfy Plaintiff's requests.

Id. at ¶ 8.

As to any search of USAO-SDNY's electronic files, including those maintained on the

N:Drive, Mr. McEnany emphasizes that:

the bulk of our case-related data is stored in our cloud storage.  As addressed in my original Declaration, a search across our cloud storage is impossible. Even attempting to address a search to USAO-SDNY's immensely large collection of files would be irresponsible as constituting an unacceptable risk of compromising or crashing our network structure. Indeed, since my original Declaration we have received multiple reports that the normal requirements of trial preparation, even on weekends, have been substantially negatively impacted by network lag time even as to simple tasks, such as creating a folder. I cannot overstate the risks and dangers to our overloaded network, and our ability to carry out our normal business functions, that would be posed by an attempt to conduct an electronic search for responsive documents. In addition to our cloud storage, individual users also have designated local storage space, commonly referred to in our District as a user's "N: drive," for an individual user's files that are not accessible to other persons. Files in N: drive storage are not indexed across the user base and any effort to conduct a systematic search of users' N: drives would place a substantial burden on systems administrator resources as well as our strained network resources. Moreover because case data is generally not stored on users' N: drives, such a search would not in any event be reasonably likely to satisfy Plaintiff's request.

Supp. McEnany Decl., at ¶ 6 (emphasis in original).

Plaintiff has pointed to no evidence that would undermine the showing by the USAO-

SDNY that it simply cannot search its electronic files for records responsive to plaintiff's

request.  Any search that would run the risk of compromising or potentially crashing the

9

electronic system of a law enforcement agency cannot be considered a *reasonable* search under any circumstances.  A search of the N;drives would also strain the network's resources being used for law enforcement purposes and would be unlikely to yield much of the data plaintiff seeks.

Plaintiff argues that DOJ encourages the use of digital search methods such as technology assisted review ("TAR") and that this should somehow aid in the search for responsive records.  Plaintiff's Opp. at 9.  Contrary to plaintiff's speculation, the use of TAR will not work.  As Mr. McEnany explains:

> TAR involves human reviewers selecting a "seed" set of documents which incorporate concepts of interest; feeding the seed set of documents into the TAR platform, which uses complex algorisms to identify characteristics of those documents; after which the TAR platform analyzes the global set of documents to retrieve documents that contain characteristics matching the seed set. The human reviewer can re-seed the TAR platform with the results of the initial review, tagging certain documents as particularly responsive, and others as non-responsive, to improve the next run. The suggestion that USAO-SDNY could use TAR to search for responsive documents is off the mark for two reasons. First of all, TAR is a computationally complex method to search for concepts in a given set of documents; but there is nothing conceptual about a search for 2703(d) cell site orders: for an otherwise manageable set of documents, simple key word searches would be the appropriate search method. Secondly, TAR assumes a set of documents that can be loaded into the TAR platform for searching. But USAO-SDNY's electronic files are not stored or mounted in a manner that can be searched (or copied over for searching in another platform) via TAR, or any other electronic search method. TAR would simply multiply the problems identified in paragraph 6 regarding electronic searches of USAO-SDNY's electronic files.

Supp. McEnany Decl., at ¶ 7.  Thus, contrary to plaintiff's claim, TAR cannot be used to search for responsive documents.

Plaintiff also claims that DOJ conveyed to plaintiff that it was impossible for USAO-

SDNY to search its Criminal Clerk's Log.  Plaintiff's Opp. at 29.   This is patently untrue.  By email dated February 7, 2019, plaintiff was specifically informed that:

> **2. Criminal Clerk's Log.** When an SDNY AUSA asks USAO-SDNY Criminal Clerks to bring a 2703(d) order to the Magistrate's Clerks, the Criminal Clerks will log the item with the date; a description of the item; the name of the AUSA; and some other identifying data, such as the subject telephone number, a magistrate's docket number, or a USAO file number. For 2016 the Criminal Clerks logged 39 items that contained the term "cell site." Because an AUSA or paralegal will frequently bring a 2703(d) order to the Magistrate's Clerks personally, the Criminal Clerks' log does not contain the universe of all 2703(d) orders for 2016.

Supplemental declaration of John. Kornmeier ("Supp. Kornmeier Decl."), ¶ 4.  Plaintiff was also specifically asked: "How would you like to proceed?"  Id.   Plaintiff never requested that USAO-SDNY search this log.  Id.; Kornmeier Decl., ¶ 8.  Plaintiff does not claim otherwise.  See generally Plaintiff's Opp.  Instead, USAO-SDNY on its own began a search.  Id.  Thus, plaintiff's claimed dismay at not receiving any responsive records from the Criminal Clerk's Log, when plaintiff was specifically asked how it wanted to proceed after information concerning this log was conveyed to it and never requested that a search be performed, is, to put it charitably, unworthy of consideration.  Plaintiff should not be heard to complain now of something it refrained from seeking at any earlier date.

## C.  USAO-EDPA

The USAO-EDPA previously explained that it has no tracking or central filing system that tracks Section 2703(d) orders, either in paper form or electronically.  Declaration of Thomas R. Perricone ("Perricone Decl."), ¶ 3.  Only some of the AUSAs, beginning in 2017, began to enter Section 2703(d) orders into CASEVIEW as a means of tracking deadlines.  Id.  Such information, however, would likely be found in comment fields or event fields for non-coded

information.  The only way to search for this information is through a text search, and that could

only be done if the use was known.  Supp. Kornmeier Decl., ¶ 7.

    With respect to physical files, the USAO-EDPA noted that it had approximately 3,000

cases open each year between 2016 and October 25, 2018, comprising 8,800 cubic square feet of

files, and a physical search of these files for Section 2703(d) orders would take "hundreds of

person hours."  Id. at ¶ 4.  Plaintiff offers no argument as to how this would constitute a

reasonable search.

    The same is true with respect to USAO-EDPA's network files, consisting of

approximately  50 TB of data.  Mr. Perricone explained that any attempted search would

possibly crash the system or, at the very least, render the system unusable for the ordinary work

of a law enforcement agency.  Perricone Decl., ¶¶  5-6.  Plaintiff's raise no argument as to why

such a search should reasonably be required.

### D.    USAO-SDCA

    The USAO-SDCA explained that it does not centrally track or file Section 2703(d)

orders, and thus they could only be found in the physical files of in a network file.  Declaration

of David Leshner ("Leshner Decl."), ¶¶ 4-5.  With approximately 23,244 cases/investigations for

2016, 2017 and 2018, Mr. Leshner explained that a manual review of these files would take

approximately 1,937 hours and "place a virtually insurmountable burden on the USAO-SDCA."

Id. at ¶ 6.  Plaintiff points to no evidence that would undermine this showing of what an

unreasonable burden such a manual review would entail.

    With respect to electronic files, the USAO-SDCA electronic files are stored in a "cloud"

which has approximately 111 TB of data, which includes over 190 million files.  Mr. Leshner

explain that any attempted search of this data "will crash the system doing the search."  Id. at  ¶

8.  Plaintiff points to no evidence that would contradict this fact.  And, as explained above,

requiring a search that could potentially crash the system of a law enforcement agency cannot be

considered reasonable in any scenario.

### E.       USAO-OKE

The USAO-OKE maintains no log or database of applications for Section 2703(d) orders

and thus they can only be found in a case file or on the office's network.  Declaration of

Christopher Wilson ("Wilson Decl."), ¶ 4.  With respect to electronic files, the USAO-OKE has

approximately 1 TB of data.  Id. at ¶ 5.  Plaintiff argues that of course a search could be done of

that amount of data.  Plaintiff's Opp. at 9.

The question is not whether the search could be done but whether it is reasonable.  The

USAO-OKE has explained that in order to do the requested search it would take 190 hours,

would likely be incomplete, and would probably yield little if any responsive information

because most of the orders at issue under seal.  Wilson Decl., ¶¶ 11-12.

*                         *                         *

Nonetheless, even if this one office could perform a search, that is not what plaintiff has

requested.  Plaintiff wants a search of all the U.S. Attorney's Offices.  Thus, the reasonableness

of the requested search has to look to what plaintiff requested.

For example, in Am. Fed. of Gov't Empl. ("AFGE") v. U.S. Dep't of Commerce, 907

F.2d 203, 208- 09 (D.C. Cir. 1990), the Court found unreasonably burdensome a request that

sought "every chronological office file and correspondent file, internal and external, for every

branch office, staff office, assistant division chief office, division chief office, assistant director's

13

office, deputy director's office, and director's office" of the Census Bureau.  Id., 907 F.2d at 205,

208–09.  The Court did not conclude that a branch here or there could do a search and thus

should be required to undertake one.  Instead, the Court looked at the request in its entirety and

assessed it in its entirety as to whether a burdensome search had been sought.  The same is

warranted here.

Plaintiff attempts to distinguish AFGE by arguing that electronic systems did not exist at

the time of the decision and that the records sought were largely not needed by the requester.

Plaintiff's Opp. at 24   The fact that electronic systems were not in place at the time of the

decision misses the point of the decision.  The basis for the Court's holding was that the breadth

of the request in terms of where a search would have to be conducted, and what that search

would entail, was unreasonable.  EOUSA has demonstrated, through a representative sample of

U.S. Attorney's Offices, that plaintiff's request is unduly burdensome both with respect to

electronic records and physical files.  Plaintiff cannot overcome that by simply targeting the

USAO-OKE, when plaintiff's request encompasses 93 other U.S. Attorney's Offices.

As EOUSA explained in its prior memorandum, the foregoing declarations represent the

results from only five of 94 USAOs, and all 94 offices are part of the one agency – defendant

DOJ – to which plaintiff directed its request.  Plaintiff does not present any basis for challenging

defendant's claim that for purposes of FOIA, they should be considered offices within an agency,

and thus, the results from these five USAOs show only a small fraction of the burden that the

entire agency would assume, if plaintiff's demand for the search sought is granted.  See

Kornmeier Decl., ¶ 14.

Plaintiff points to searches that have been conducted by EOUSA involving office-wide

14

email requests for searches and argues that the same could be done here.  On the contrary, as Mr.

Kornmeier explains:

> These examples are inapposite. EPIC cites searches done in PACER. The FOIA
> only covers Executive Branch agencies. PACER is a Judicial Branch system.
> Moreover, one example cited is where the court number was supplied by the
> requester which led to the PACER search for convenience, hardly relevant to this
> nationwide case with no information from the requester that could be readily
> located in an electronic system. Further, most cell site orders are sealed.  Another
> example is a search of LIONS (previous name of CASEVIEW). Again this was
> done with particular case information supplied. Another is where the plaintiff's
> case file was retrieved and then searched. One case, one plaintiff, case
> information supplied by requester. These examples so differ in available
> information and scope from EPIC's requests that they are irrelevant.

Supp. Kornmeier Decl. ¶ 8.

Plaintiff's request for email searches is particularly inapt.  Mr. Korneier explains that:

> EPIC has stated that it wants a search of email files. Given the global nature of its
> requests, the burden on the resources of EOUSA of such a search would be
> extraordinary. Each of the 4,500 Criminal AUSAs in the 94 USAOs receive on
> average of 85.96 emails per day. This works out to 386, 819.48 emails per day for
> all USAOs, In turn this would be 100,959,885.39 emails per year and
> 302,879,656.00 over a three year period for which emails are retained. Such an
> effort would preclude any other searches for any purpose during the entire time it
> would take. By way of comparison to EPIC's request, most of the FOIA requests
> for emails involve a handful of custodians. . .

> Almost any relevant terms such as "cell site", "location" and "2703(d)" would yield
> a tremendous number of documents which would require a labor intensive review
> for responsiveness and appropriate redactions. Even if the yield from a key word
> search is just one percent, 3,000,000 documents, the time for EOUSA's FOIA Staff
> of eleven attorneys and nine Government Information Specialist, who handle
> between four and five thousand requests a year, to process, review, and redact
> would be simply unreasonably burdensome.  During the period for which EPIC
> requests, the *Carpenter* case created a large volume of just information emails and
> questions cell site orders which would only increase the volume requiring review.
> The essential conundrum here can be seen by looking at the definition of an
> adequate search. For FOIA purposes, an adequate search is one reasonably
> calculated to find responsive documents. Unfortunately in this case, those search
> terms which would be the minimum number to meet the standard of "reasonably
> calculated" would also create such a huge number of documents that the resulting

15

labor intensive processing and review would be unreasonably burdensome. And even then, as discussed in the paragraph below, it's not clear that there would be any meaningful results.

Supp. Kornmeier Decl. ¶¶ 9-19.

Another factor plaintiff glosses over is the fact that most of the Section 2703(d) orders are under seal, and thus would be withheld from release even if such an unduly burdensome search were undertaken.  See, e.g., Martin Decl., ¶ 6; Fleshner Decl., ¶ 9; Wilson, ¶ 11; McEnany Decl. ¶ 8, Perricone Decl., ¶ 7.  Unsealing orders are rarely obtained.  McEnany Decl. ¶ 8, Perricone Decl., ¶ 7.  Plaintiff argues that defendant has never released to the public the frequency of its access to cell phone location data.  Plaintiff's Opp. at 4-5.  Plaintiff clearly made these FOIA requests to try and obtain the umber of Section 2703(d) cell phone orders issued.  But even if certain sporadic limited searches could be done, plaintiff will never obtain the information it seeks, which is the total number of Section 2703(d) orders issued.  Thus, plaintiff seeks an unduly burdensome search for no real positive gain to plaintiff.

The foregoing demonstrates that the search sought by plaintiff here, encompassing all USAOs, would be unduly burdensome.  Accordingly, summary judgment should be granted to defendant with respect to Count II.

### III.  EOUSA Dos Not Engage in a Pattern and Practice of Violating the FOIA

In Count V plaintiff alleges that EOUSA has a policy, pattern and practice of failing to comply with FOIA's statutory deadlines with respect to plaintiff's FOIA requests.  Defendant demonstrated that plaintiff's claims are without merit.  See Defendant's Mem. at 13-16.  Plaintiff offers no response.  See generally Plaintiff's Opp.

Under such circumstances defendant is entitled to summary judgment on Count V.

**IV.      Counts I and II are Moot and Should be Dismissed**

In Count I plaintiff claims that EOUSA has failed to make a final determination as to its

FOIA requests.  In Count II plaintiff claims that defendant failed to grant plaintiff expedited

processing.  Defendant has demonstrated that both of these claims are now moot.  <u>See</u>

Defendant's Mem. at 16-17.  Plaintiff offers no response.  <u>See</u> <u>generally</u> Plaintiff's Opp.

Under such circumstances defendant is entitled to summary judgment on Count s I and II.

**V.      Plaintiff has Failed to Exhaust its Administrative Remedies with
        Respect to a Request for Warrant Information nor is that Claim
        Included in the Amended Complaint**

Plaintiff argues that in its third request it sought access to not just the first page of Section

2703(d) orders but also to warrant information and defendant has failed to address the issue of

warrants.  Plaintiff's Opp. at 5, 13.  The answer to this claim is easy – the First Amended

Complaint does not raise the issue of any request for warrant information.

The only time plaintiff requested information pertaining to warrants was in plaintiff's

July 2, 2019 request.  Plaintiff's Opp. at 5 & Plaintiff's Ex. 1.  But the First Amended Complaint

does not raise the issue of plaintiff's request for warrant information.  <u>Id</u>., ¶ 38.  As such, any

claim concerning plaintiff's request for warrant information is not properly in this case.

Moreover, even if plaintiff had raised the issue in the amended complaint, plaintiff failed

to exhaust its administrative remedies with respect to this issue.  When plaintiff made its July 2,

2019 FOIA request, this case had already been filed and the July 2, 2019 request plainly was not

a part of the case.  Plaintiff moved for leave to file an amended complaint on August 26, 2019,

and defendant subsequently decided not to oppose the motion, because the amended complaint

was still focused on seeking access to the first page of Section 2703(d) orders.  This does not

mean, however, that defendant agreed that all of the July 2, 2019 request became part of this case, even the parts not mentioned in the amended complaint.

Plaintiff has failed to exhaust its administrative remedies with respect to the July 2, 2019 FOIA request.  The request was submitted July 2, 2019, and EOUSA denied the request on July 25, 2019.  Supp. Kornmeier Decl., ¶ 5  Exs A, B & C.  Because EOUSA responded before any litigation was filed with respect to this request, plaintiff was required to exhaust its administrative remedies.  See, e.g., Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 63-64 (D.C. Cir. 1990); Bonner v. Social Security Admin., 574 F. Supp.2d 136, 139 (D.D.C. 2008).  Plaintiff, however, filed no such administrative appeal.  Supp. Kornmeier Decl., ¶ 5  Ex C.

Thus, because plaintiff failed to exhaust its administrative remedies with respect to its request for warrant information, and failed to raise that as a claim in the First Amended Complaint, plaintiff's claim that defendant has failed to address this request is without merit.

## CONCLUSION

Although obviously an unintentional concession on plaintiff's part, "[t]he agency has carried its burden" to show why a search would be unreasonably burdensome.  Plaintiff's Opp. at 23.  Accordingly, for all of the reasons set forth above, and in defendant's prior memorandum and declarations, defendant respectfully submits that its motion for summary judgment should be granted and plaintiff's cross-motion for summary judgment should be denied.

Respectfully submitted,

JESSIE K. LIU,
D.C. BAR # 472845
United States Attorney
for the District of Columbia

18

DANIEL F. VAN HORN,
D.C. BAR #924092
Chief, Civil Division

/s/ *Marina Utgoff Braswell*
MARINA UTGOFF BRASWELL,
D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-2561
Marina.Braswell@usdoj.gov

19

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Civil Action No. 18-1814 (TNM) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) |
| Defendant. | ) ) |

_____

## <u>**ORDER**</u>

Upon consideration of defendant's motion for summary judgment, plaintiff's cross-motion for summary judgment, the oppositions and replies to those motions, and the entire record in this case, the Court finds that there are no issues of material fact and the defendant is entitled to judgment as a matter of law. Therefore, it is hereby

ORDERED that defendant's motion for summary judgment is granted; and it is further

ORDERED that plaintiff's cross-motion for summary judgment is denied.

This is a final, appealable order.

_____
UNITED STATES DISTRICT JUDGE